## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

Case No. 08-20717-CIV-MOORE/SIMONTON

GERONIMO H. HERNANDEZ, ET AL.,

      Plaintiffs,

vs.

BRINK'S, INCORPORATED,

      Defendant.

_____/



### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment (dkt # 54).

UPON CONSIDERATION of the Motion, the Responses, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

## I.    BACKGROUND

Plaintiffs bring this action for unpaid overtime compensation under the Fair Labor Standards Act ("FLSA"). 29 U.S.C. §§ 210-219. "[Defendant] Brink's is a secured transportation service company, engaged in the business of providing armored vehicle transportation, protection and security of its customers' coin, currency, negotiable instruments and other valuables." Def.'s Statement of Undisputed Material Facts in Supp. of Mot. for Summ. J. ("Def.'s Facts"), ¶ 2 (dkt # 56).[1]  Plaintiffs include: (1) Geronimo H. Hernandez ("Hernandez"), a Driver; (2) Vladimir Sotomayor ("Sotomayor"), a Messenger; (3) Ociel Guada ("Guada"), a Driver; (4) Francisco Roque

---

[1] Citiations to the Parties' Statements of Material Fact incorporate by reference the underlying documents.

("Roque"), a Driver; (5) Frank Padron (Padron"), a Driver; (6) Victor Gomez ("Gomez"), a Driver;

(7) Angel Carpio ("Carpio"), a Messenger; (8) Humberto Zamora ("Zamora"), a Messenger; (9) Luis

Chaveco ("Chaveco"), a Messenger and/or Automatic Teller Machine ("ATM") Technician. Id. ¶¶

3-4; Res. in Opp. To Def.'s Mot. for Summ. J., Ex. B ¶¶ 7-10 (dkt # 62); Am. Compl. (dkt # 5).

Brink's Drivers are responsible for driving the armored vehicles, conducting pre-operation

vehicle safety checks, and completing the Brink's Driver Vehicle Condition Form. Def.'s Facts, ¶¶

60-62. Messengers exercise supervision over the armored vehicle crew, assist in safely guiding the

vehicle when it is traveling in reverse, and help to load and unload the armored vehicles before and

after they are used. Id. ¶¶ 60-62. 30, see Mem. of Law in Support of Mot. for Summ. J., at 5 (dkt #

55). ATM Technicians are Messengers who are also responsible for withdrawing and replenishing

funds in ATM's, as well as carrying out other messenger responsibilities. Def.'s Facts, ¶ 33.

Messengers and ATM Technicians are also qualified to drive the vehicle if necessary. Id. ¶ 10.

## II.    STANDARD OF REVIEW

The applicable standard for reviewing a summary judgment motion is unambiguously stated

in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought should be rendered if the pleadings, the discovery and
> disclosure materials on file, and any affidavits show that there is no genuine
> issue as to any material fact and that the movant is entitled to judgment as a
> matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. Twiss v.

Kury, 25 F.3d 1551, 1554 (11th Cir. 1994). The moving party has the burden of meeting this

exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). An issue of fact is

"material" if it is a legal element of the claim under the applicable substantive law which might

affect the outcome of the case.  <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997).  An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  <u>Id.</u>

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion.  <u>Id.</u>  However, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).

## III.   ANALYSIS

### A.  The FLSA's Motor Carrier Exemption

Brink's asserts it is entitled to summary judgment because it is exempt from the FLSA's wage and hour requirements.  Section 213(b)(1) of the FLSA provides that it does not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49."  29 U.S.C. § 213(b)(1).  The Secretary of Transportation has jurisdiction over transportation by a motor carrier of persons or property in interstate or foreign commerce.  49 U.S.C. § 13501.  Under the Motor Carrier Act, the Secretary of Transportation may regulate "qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier."  49 U.S.C. § 31502(b)(1).

3

1. Claims Before August 10, 2005

Plaintiffs seek to recover unpaid overtime compensation earned between March 19, 2005 and March 19, 2008, the date that the Complaint in this action was filed. On August 10, 2005, the definition of a motor carrier for purposes of the FLSA's motor carrier exemption was amended by the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"). Pub.L. 109-59, 199 Stat. 1144 (2005). Prior to August 10, 2005, a motor carrier was defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14) (effective until August 9, 2005) (providing the relevant definition of motor carrier under 49 U.S.C. § 31501(2)). This definition applies to Plaintiffs' overtime compensation claims for hours worked prior to August 10, 2005, because the SAFETEA-LU amendment of the definition of motor vehicle does not apply retroactively. Musarra v. Digital Dish, Inc., 454 F. Supp.2d 692, 703 (S.D.Ohio 2006) (finding that SAFETEA-LU does not include a clear statement by Congress that it applies retroactively); see Landgraf v. USI Film Products, 511 U.S. 244, 280 (1994) (requiring a clear statement from Congress for a civil statute to apply retroactively). Accordingly, this Court will apply the pre-SAFETEA-LU definition of a motor carrier to Plaintiffs' claims for overtime compensation accrued before August 10, 2005.

The Department of Labor has issued regulations concerning the scope of the FLSA's motor carrier exemption. The Secretary of Transportation has authority to establish maximum hours and qualifications of service of employees when two conditions are met: (1) the employees must be "employed by carriers whose transportation of passengers or property by motor vehicle is subject to [the Secretary of Transportation's] jurisdiction", and (2) the employees must "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the

4

public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2(a); *see also* <u>Baez v. Wells Fargo Armored Serv. Corp.</u>, 938 F.2d 180, 181-82 (11th Cir. 1991). If these two conditions are met, the FLSA's motor carrier exemption is triggered and the employee is exempt from the FLSA's wage and hour provisions.

a. Interstate Commerce

Brink's is a motor carrier that transports property in interstate commerce because Brink's transports checks destined for banks outside of Florida and transports property destined for interstate and foreign locations. It is unnecessary for an employee to engage in interstate travel as long as the property being transported is bound for an interstate destination. <u>Baez</u>, 938 F.2d at 182 (finding that the FLSA's motor carrier exemption applied to drivers and driver's helpers who only traveled intrastate but who transported checks bound for banks outside of Florida); <u>Opelika Royal Crown Bottling Co. v. Goldberg</u>, 299 F.2d 37 (5th Cir. 1962) (applying motor carrier exemption to employees traveling intrastate but who transported empty soft drink bottles bound for another state); <u>Alvarado v. I.G.W.T. Delivery Sys., Inc.</u>, 410 F. Supp.2d 1272, 1277 (S.D.Fla. 2006) (applying motor carrier exemption to employees who only traveled intrastate but transported letters and packages bound for interstate destinations). Here, Brink's and Plaintiffs were engaged in transporting checks and other property destined for interstate or foreign destinations. Accordingly, the nature of Brink's relevant activities fall squarely within the meaning of interstate commerce for purposes of the Motor Carrier Act. Not. of Filing Exs. in Supp. of Mot. for Summ. J., Ex. 3, ¶¶ 36-38 (dkt # 58); Not. of Filing Exs. in Supp. of Def.'s Rep. to Pl.'s Res. In Opp. to Mot. for Summ. J., Ex. 45, (dkt # 64); *see* Def.'s Facts, ¶ 69-71.

5

b. Activities Directly Affecting the Safety of Operation

Plaintiffs' job-related duties directly affect the safety of operation of motor vehicles in the transport of property in interstate commerce. "The exemption of an employee . . . depends both on the class to which his employer belongs and on the class of work involved in the employee's job." 29 C.F.R. § 782.2(a). For purposes of the Motor Carrier Act, a driver includes:

> Individuals whose driving duties are concerned with transportation some of which is in intrastate commerce and some of which is in interstate or foreign commerce within the meaning of the Motor Carrier Act; [and] individuals who ride on motor vehicles engaged in transportation in interstate or foreign commerce and act as assistant or relief drivers of the vehicles in addition to helping with loading, unloading, and similar work."

29 C.F.R. §782.3(a). A driver's helper includes "an employee other than a driver, who is required to ride on a motor vehicle when it is being operated in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.4(a). Driver's helpers include armed guards on armored trucks because they directly affect the safety of operation of armored trucks in interstate or foreign commerce. Id. An employee who must exit the vehicle and flag the driver or perform a similar duty when a vehicle is being turned on a busy highway or when entering or exiting a driveway is also a driver's helper. Id. An employee may be a helper "even though such safety-affecting activities constitute but a minor part of his job." 29 C.F.R. § 782.4(b); *see also* Baez, 938 F.2d at 180 (affirming summary judgment finding that guards on an armored vehicle were driver's helpers). Therefore, drivers and driver's helpers who meet the foregoing criteria are exempt from the FLSA's overtime requirements because of the nature of their duties, and not merely because of the employee's job title. 29 C.F.R. §782.3(b).

Here, the job duties of each of the Plaintiffs, including Driver, Messenger, and ATM

6

Technicians, qualify Plaintiffs as drivers or driver's helpers. Given this Court's finding that Brink's engages in transportation of property in interstate commerce, Plaintiffs who worked as Drivers fall within the regulation's definition of drivers who affect the safety of operation and are therefore covered by the FLSA's motor carrier exemption. Likewise, Messengers and ATM Technicians are also covered by the motor carrier exemption as driver's helpers because they are "employee[s] other than a driver, who [are] required to ride on a motor vehicle when it is being operated in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.4(a). ATM Technicians also carry out other Messenger responsibilities and thus Messengers and ATM technicians would be responsible for flagging the vehicle as it travels in reverse under various circumstances and must also be qualified to drive if necessary. The class and nature of the duties of Messengers and ATM Technicians place these employees within the scope of the FLSA's motor carrier exemption. Accordingly, Plaintiff Drivers, Messengers and ATM Technicians are not entitled to overtime compensation under the provisions of the FLSA for hours worked before August 10, 2005.

### 1. Claims After August 10, 2005

As already stated, the Motor Carrier Act was amended by SAFETEA-LU. After August 10, 2005, the effective date of SAFETEA-LU, the Motor Carrier Act's definition of a motor carrier was changed to "a person providing commercial motor vehicle (as defined in section 31132) transportation for compensation." 49 U.S.C. § 13102(14) (effective until June 5, 2008) (providing the applicable definition of motor carrier pursuant to 49 U.S.C. § 31501(2)). A commercial motor vehicle is defined, in relevant part, as "a self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle has a gross vehicle rating or

gross weight of at least 10,001 pounds, whichever is greater." 49 U.S.C. § 31132(1). Therefore, after the enactment of SAFETEA-LU, the Secretary of Transportation had jurisdiction over a person transporting property in interstate commerce if the transporting vehicle had the greater of a gross vehicle rating ("GVR") or weight of at least 10,001 pounds.

Plaintiffs contend that they are not covered by the FLSA's motor carrier exemption because in certain weeks they worked partially in vehicles with a GVR and weight of less than 10,001 pounds, and in a certain weeks some worked entirely in vehicles with a GVR and weight of less than 10,001 pounds. Here, Brink's operated a fleet of armored vehicles in which approximately 95 of 104 total vehicles were at least 10,001 pounds. Def's Facts, ¶¶ 38-44 Viewing the facts in the light most favorable to Plaintiffs, it appears that Plaintiffs Hernandez, Roque, Padron, Gomez, Chaveco, Carpio, and Sotomayor did at least some work in the approximately nine vehicles with a GVR or weight under 10,001 pounds during certain workweeks. Res in Opp. To Def.'s Mot. for Summ. J., Exs. A, C, D, E, F, G, I. Plaintiffs Hernandez, Sotomayor, Roque, Chaveco each also worked between two and four complete workweeks in vehicles with a GVR or weight under 10,000 pounds. Id. at Exs. A, B, C, F.

Plaintiffs are covered by the FLSA's motor carrier exception, even though they may have worked in a vehicle with a GVR and weight of less than 10,001 pounds during certain work weeks. The use of a mixed fleet of vehicles which have a GVR or weight of over and under 10,001 pounds raises the question of whether and to what extent the Secretary of Transportation has jurisdiction over the carrier. The Department of Labor regulations do not provide guidance on the use of a mixed fleet, but do address the somewhat analogous issue of mixed duties involving safety of operation. "As a general rule, if the bona fide duties of the job performed by the employee are in fact such that

8

he is . . . called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities . . . he comes within the exemption in all workweeks when he is employed at such job." 29 C.F.R. § 782.2(3). "Where this is the case, the rule applies regardless of the proportion of the employee's time or of his activities which is actually devoted to such safety-affecting work in a particular workweek, and the exemption will be applicable even in a workweek when the employee happens to perform no work directly affecting 'safety of operation.'" Id. "On the other hand, where the continuing duties are so trivial, casual, and insignificant as to be de minimus, the exemption will not apply to him in any workweek so long as there is no change in his duties." Id. These regulations appear to be based on the general principle that when mixed activities occur, the Motor Carrier Act favors coverage of the employee during the course of employment in that job, unless the regular and ongoing duties of the employee have only a de minimus effect on the safety of operation.

The issue of whether an entity meets the Motor Carrier Act's definition of a motor carrier by its use of commercial motor vehicles with a GVR or weight of at least 10,001 pounds is not entirely analogous to the mixed duties analysis. In the case of mixed duties, employees can be distinguished by the effect of their duties on the safety of operations without affecting the carrier's status as a motor carrier. In the case of a mixed fleet of vehicles, however, where employees sometimes use vehicles that do not qualify as commercial motor vehicles, the question arises as to whether those employees are covered by the FLSA's motor carrier exemption. The answer depends on whether and to what extent an entity with a mixed fleet is a motor carrier for purposes of the Motor Carrier Act.

Under a plain reading of the definition of a motor carrier, an entity qualifies as a motor carrier only with respect to qualifying commercial vehicles, and is not a motor carrier with respect to non-

9

commercial vehicles. Therefore, a mixed fleet may be viewed as two separate sub-fleets, only one of which classifies the entity as a motor carrier. This approach results in a legal fiction that designates a single entity as a motor carrier with respect to its sub-fleet of commercial motor vehicles, and as a non-motor carrier with respect to its sub-fleet of non-commercial vehicles. Thus, the only remaining question is whether employees who have mixed duties on both sub-fleets are covered by the FLSA's motor carrier exemption.

Reverting to the principle derived from regulations governing mixed duties, when mixed activities occur, the Motor Carrier Act favors coverage of the employee during the course of employment. Applying this principle to duties on a mixed fleet, as long as an employee's duties affect the safety of operation of vehicles covered by the Motor Carrier Act, the employee is covered by the motor carrier exemption "regardless of the employee's time or of his activities which is actually devoted to such safety-affecting work in the particular workweek, and the exemption will be applicable even in a workweek when the employee happens to perform no work directly affecting 'safety of operation.'" 29 C.F.R. § 782.2(3). Conversely, if an employee's principal duties involve tasks related to non-commercial vehicles, and only sporadically assists with duties involving commercial vehicles, such duties would likely have "no substantial direct effect on such safety of operation" and would be so "trivial, casual, and insignificant as to be de minimus." Id.

Plaintiffs, during the course of their employment, engaged in duties affecting the safety of operations on commercial motor vehicles. None of Plaintiffs job duties involved primarily non-commercial vehicles to an extent that would render the effect of their duties on the safety of operation of commercial motor vehicles de minimus. Each Plaintiff worked on both commercial and non-commercial vehicles and their duties therefore sufficiently impacted the safety of operations of

10

commercial motor vehicles to bring them within the scope of the FLSA's motor carrier exemption. *See* Collins v. Heritage Wine Cellars, Ltd., No. 07-CV-1246 (RMD), 2008 WL 5423550, at * 19-20 (N.D. Ill. 2008) (holding that an entity with a mixed fleet constitutes a motor carrier under the Motor Carrier Act, thereby triggering the FLSA's motor carrier exception); Tidd v. Adecco USA, Inc., No. CV-07-11214 (GAO), 2008 WL 4286512, at *2 (D.Mass 2008) (same).

Although four Plaintiffs reported periods of two to four weeks during which they worked on non-commercial vehicles, these periods do not sufficiently change the nature of their employment to exclude them from coverage of the Motor Carrier Act. The regulations governing the FLSA's motor carrier exemption state that "[w]here the same employee of a carrier is shifted from one job to another periodically or on occasion, the application of the exemption to him in a particular workweek [depends] . . . on the job or jobs in which he is employed in that workweek." 29 C.F.R. § 782.2(3). It is thus evident that when an employee's duties change so significantly that the change in duties constitutes a change from one job to another, the applicability of the FLSA's motor carrier exemption may vary from week to week. However, even during the weeks in which Plaintiffs worked a full week on a non-commercial vehicle, the nature of their duties did not meaningfully change to a degree that would constitute a change from one job to another. Therefore, Plaintiffs were covered by the FLSA's motor carrier exception, even during workweeks when they worked on non-commercial vehicles.

C. The SAFETEA-LU Technical Corrections Act

On June 6, 2008, Congress passed the SAFETEA-LU Technical Corrections Act of 2008 (the "Technical Corrections Act"). Pub.L. No. 110-224, 122 Stat. 1572 (2008). Section 305 of the Technical Corrections Act is labeled "Motor Carrier Transportation Registration" and states:

11

(a) GENERAL REQUIREMENTS.-Section 31138 of title 49, United States Code, is amended- . . . .  (c) DEFINITIONS RELATING TO MOTOR CARRIERS.-Paragraphs 6(B), 7(B), (14), and (15) of Section 13102 of such title are each amended by striking "commercial motor vehicle (as defined in section 31132)" and inserting "motor vehicle."

Id.  The effect of this amendment was to change the definition of a motor carrier back to the same definition that was in effect prior to the August 10, 2005, SAFETEA-LU amendment.  However, the Technical Amendment Act's change to the definition of a motor carrier is not retroactive and does not impact the period from August 10, 2005, to June 5, 2008, when the SAFETEA-LU amendment was in effect.  Vidinliev v. Carey Int'l, Inc., 581 F. Supp.2d 1281, 1288-1291 (N.D.Ga. 2008) (holding that the Technical Correction Act's amendment to the definition of a motor carrier does not apply retroactively).  This Court adopts the reasoning in Vidinliev v. Carey Int'l, Inc. supporting the conclusion that the Technical Correction Act's amendment to the definition of a motor carrier does not apply retroactively.  Id.  Therefore, even after the Technical Corrections Act, Plaintiffs are covered by the FLSA's motor carrier exemption, for the reasons stated in subsection A(1) of this Order.  Accordingly, Plaintiffs are not entitled to overtime compensation under the FLSA.

## IV.  CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (dkt # 54) is GRANTED.  The Clerk of the Court is instructed to CLOSE this case.  All pending motions are DENIED AS MOOT.

12

DONE AND ORDERED in Chambers at Miami, Florida, this $\cancel{5th}$ day of January, 2009.

M. Moore

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:    All Counsel of Record

13